## THE COLORADO.

### THE T. L. STURTEVANT.

(District Court, E. D. New York. August 5, 1902.)

1. COLLISION—STEAM VESSELS—FAILURE TO MAINTAIN PROPER LOOKOUT.
    Two steam vessels, which came into collision on converging courses in East river, no signal having been made by either, both *held* in fault for the failure to maintain a proper and efficient lookout.

In Admiralty. Suit and cross-libel for collision.

Wilcox & Green, for libelants.

James J. Macklin, for claimants.

THOMAS, District Judge. On the 2d day of February, 1900, at 7 p. m., on a flood tide, the ferryboat Colorado came in collision with the steam lighter Sturtevant, in the East river, and for the injuries severally received by the vessels the libel and cross-libel herein are filed. When the Colorado was coming from her slip at Elizabeth street, she gave one long slip whistle. Then the Sturtevant was somewhat above the Brooklyn Bridge, but had not passed the ferry slip. No signals were exchanged between such vessels. At the same time the ferryboat Republic, bound diagonally across the river for Main street, Brooklyn, issued from the slip adjoining at Catherine street. The Colorado passed under her stern. Thereafter the Republic exchanged a single whistle with the Sturtevant. At about the time the Sturtevant was crossing the bows of the Republic, the Minneola came from Main street, Brooklyn, bound for the Catherine street slip in New York. The Sturtevant passed in front of the Minneola, whether with or without signals it is unnecessary to determine, and shortly thereafter the Sturtevant and Colorado came together somewhere near the center of the river. The intended courses of the Colorado and the Sturtevant were up the river, and with the flood tide prevailing it was to the advantage of each vessel to be nearer the center of the river than either shore. The claim of the Sturtevant is that when she was near the center of the river, and in advance of the Colorado, the latter, having turned upstream, was discovered on the lighter's port quarter, and that she immediately struck the lighter about 20 feet from the stern, scraping along her side to a point some 20 feet aft the bow. The claim of the Colorado is that when she came from her slip the Sturtevant was about abreast of her, and some 200 feet from the Brooklyn shore; that later, when the Colorado had passed up to the neighborhood of slip 42, the Sturtevant was suddenly seen coming up from behind on the starboard side, and the latter's bow, 5 feet aft the stem, struck the ferryboat at a point about 75 feet from her bow, and some 10 or 15 feet forward of the wheel; and that the port side of the lighter then swung against the ferryboat, producing the other injuries which she undoubtedly received along her port side. There is the usual diversity of evidence, but there is no difficulty in reaching the following finding of facts: That the Colorado, bound for a slip which should take her up the center of the river, passed under the stern of the Republic, and attempted to reach a somewhat central position in the river; that meantime the Sturtevant, somewhat to the Brooklyn side of the center of the river, but by no means as far as stated by the witnesses on the Colorado, exchanged signals to pass in front of the Republic, and did so, and then went to port, pursuant to signals or otherwise, in order to cross the bow not only of the Republic, but also of the Minneola, so that, while the Colorado was approaching the center of the river, for the purpose of straightening up for her slip, the Sturtevant was going to port to avoid the Republic and the Minneola. It is less certain what each vessel did as they came nearer together. The evidence of Durkee, a skilled mariner, and disinterested witness, is helpful. He testifies that the Colorado earlier was astern of the Sturtevant, both headed to the eastward, on courses 150 feet

apart, and that at the time of the collision the bow of the Sturtevant was aft the bow of the Colorado. In such case the Colorado's bow had passed, and she herself was passing, the Sturtevant, at the time of the collision. Durkee further states that the Sturtevant suddenly came to port, thereby changing her course fully four points. But, standing on the Colorado, he might not be able to know whether she went to starboard or the Sturtevant came to port. He would not say that the Colorado was under a steady wheel. He states that, while he was still forward, he saw the red light, and later the green light, of the Sturtevant open. This would be decisive, if it were not that the Colorado, passing and crossing the Sturtevant's bow, would open the latter's lights to the extent Durkee saw them. It is evident that at the time the Sturtevant was going to port, if she did, the Colorado had not passed her, but was abeam of her. Inasmuch as the Colorado was the faster vessel, the Sturtevant could not have changed her course to port, traveled the distance of 150 feet, and struck the Sturtevant 75 feet aft of the Colorado's stem, unless the deflection had begun before the Colorado's pilothouse was forward of the Sturtevant. The Colorado was 185 feet and the Sturtevant 86 feet in length. The Colorado, at the outstart, was overtaking, and should have observed the Sturtevant's diagonal approach earlier than she did. But the Sturtevant must have seen that she and the Colorado were drawing towards each other, for the Colorado's bow projected beyond the Sturtevant's stem at the time of the collision. It is inconceivable that the vessels should not have discovered each other upon converging courses had proper lookout been kept. But each pilot claims that he was surprised.

The damages and costs will be divided.